**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
|     Plaintiff, | : Civil Action No. 1:21-cv-00367 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| MIMECAST LIMITED, PETER BAUER, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| ARON AIN, HELENE AURIOL POTIER, | : **SECURITIES EXCHANGE ACT OF** |
| ALPNA J. DOSHI, CHRISTOPHER | : **1934** |
| FITZGERALD, NEIL MURRAY, ROBERT P. | : |
| SCHECHTER, HAGI SCHWARTZ, and | : **JURY TRIAL DEMANDED** |
| STEPHEN WARD, | : |
| | : |
|     Defendants. | |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Mimecast Limited ("Mimecast or the "Company") and the members Mimecast board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Mimecast by affiliates of Permira Advisers LLC ("Permira").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 12, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Mimecast will merge with and into Magnesium Bidco Limited ("Buyer") with Mimecast becoming a wholly owned subsidiary of Buyer (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Mimecast common share issued and outstanding will be converted into the right to receive $80.00 (the "Merger Consideration").

3. As discussed below, Defendants have asked Mimecast stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the special committee formed by the Board consisting of defendants Schechter, FitzGerald, Potier and Schwartz (defined below) ("Special Committee"), Citigroup Global Markets Inc. ("Citi") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Mimecast stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Mimecast common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Peter Bauer has served as a member of the Board since co-founding the Company in 2003 and is the Chair of the Board and the Company's Chief Executive Officer.

11. Individual Defendant Aron Ain has served as a member of the Board since April 2017.

12. Individual Defendant Helene Auriol Potier ("Potier") has served as a member of the Board since January 2021.

13. Individual Defendant Alpna J. Dishi has served as a member of the Board since December 2019.

14. Individual Defendant Christopher FitzGerald ("FitzGerald") has served as a member of the Board since 2007.

15. Individual Defendant Neil Murray has served as a member of the Board since 2003.

16. Individual Defendant Robert P. Schechter ("Schechter") has served as a member of the Board since January 2019. Schechter is the Chair of the Special Committee.

17. Individual Defendant Hagi Schwartz ("Schwartz") has served as a member of the Board since July 2015.

18. Individual Defendant Stephen Ward has served as a member of the Board since January 2018.

19. Defendant Mimecast is a public limited company incorporated under the Laws of the Bailiwick of Jersey. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "MIME."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

22. Mimecast provides cloud security and risk management services for corporate information and email. The Company offers Mimecast Email Security solution, which protects against the delivery of malware, malicious URLs and attachments, spam, viruses, impersonation attacks, phishing, and spear-phishing attacks, including business email compromise, identity theft, extortion, fraud, and other attacks, while also preventing data leaks and other internal threats, as well as provides awareness training services. It also provides Cyber Resilience Extensions, such

as Mimecast Enterprise Information Archiving that unifies email data to support e-discovery, forensic analysis, and compliance initiatives; Mimecast Business Continuity and Sync & Recover, which protects email and data against the threat of downtime as a result of system failure, natural disasters, planned maintenance, system upgrades, and migrations; and Mimecast Web Security service that protects against malicious web activity initiated by user action or malware and blocks access to inappropriate websites based on acceptable use policies. In addition, the Company's Cyber Resilience Extensions also comprise Mimecast Secure Messaging, a secure and private channel to share sensitive information; Mimecast Health Care Pack, which prevents breaches and protects against data exfiltration transmissions; and Mimecast Large File Send that enables employees to create security and compliance risks when they turn to file sharing services. Further, it offers Threat Intelligence Dashboard, which displays cyber threat data specific to an organization by identifying users who pose the greatest cyber risk; and Mimecast Mobile and Desktop Apps for mobile, PC, and Mac users, as well as engages in data center operations. The Company sells its services through direct sales and channel partners. Mimecast was founded in 2003 and is headquartered in London, the United Kingdom.

23.     On December 7, 2021, Mimecast announced that it had entered into the Proposed Transaction:

> LEXINGTON, Mass., Dec. 07, 2021 (GLOBE NEWSWIRE) -- Mimecast Limited (NASDAQ: MIME), a leading email security and cyber resilience company, today announced that it has entered into a definitive agreement whereby funds advised by Permira, a global private equity firm focused on transformational growth at scale, will acquire the company. Under the terms of the agreement, Permira will acquire all outstanding ordinary shares of Mimecast for $80.00 per share in an all-cash transaction that values Mimecast at an equity value of approximately $5.8 billion.
>
> "Today is an exciting milestone for Mimecast as we begin a new chapter for our company," said Peter Bauer, chairman and chief

executive officer of Mimecast. "Our team has done an outstanding job growing and expanding our relationships with customers and innovating our platform. Permira has a strong track record of collaboratively supporting companies' growth ambitions and strategic goals, and we look forward to working together to further strengthen the cybersecurity and resilience of organizations around the world. This is a great outcome for our company and our shareholders."

Robert Schechter, independent director of Mimecast and chair of the Special Committee, said, "This transaction follows a strategic process overseen and directed by an independent Special Committee of the Board of Directors that included discussion with a number of strategic and financial parties. We are pleased to deliver significant immediate cash value to our shareholders and believe that this transaction is the best path forward for Mimecast and our stakeholders."

"We have long admired Mimecast, its management team and its talented employees," said Permira Partners, Michail Zekkos and Ryan Lanpher. "Email is the leading vector for cyberattacks, and phishing and impersonation attempts are continuously evolving. This means there has never been more urgency or need for organizations to protect their critical data and infrastructure. With an innovative platform, world-class security controls and scalable model, Mimecast is ideally positioned to help companies both large and small protect their employees from malicious activity. We look forward to leveraging our experience scaling global technology businesses as we partner with Peter and team on their next phase of growth."

Pierre Pozzo, Principal at Permira, added, "Mimecast is widely recognized as an established leader and innovator in the email security space with a strong and growing position in the enterprise market. We share the company's belief in the significant opportunity ahead in cybersecurity across all collaboration channels, especially as more individuals have transitioned to a remote workplace. We look forward to partnering with the Mimecast team to accelerate the product roadmap and expand the go-to-market organization in order to drive further growth."

**Transaction Details**

Under the terms of the agreement, which was approved and recommended by an independent Special Committee, and then approved by the Mimecast Board of Directors, Mimecast

shareholders will receive $80.00 in cash for each ordinary share they own. The purchase price represents a premium of approximately 16% to Mimecast's unaffected closing stock price on October 27, 2021, the last full trading day prior to a Wall Street Journal article disclosing details regarding the company's strategic review process, and an approximately 21% premium to the company's unaffected 20-day volume weighted average price (VWAP).

The agreement includes a 30-day "go-shop" period expiring on January 6, 2022. During this period, the Special Committee and its advisors will actively initiate, solicit, encourage, and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that may offer alternative acquisition proposals. Mimecast will have the right to terminate the agreement to enter into a superior proposal subject to the terms and conditions of the agreement. There can be no assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed. Mimecast does not intend to disclose developments with respect to the go-shop process unless and until its Special Committee makes a determination requiring further disclosure.

The transaction is expected to close in the first half of 2022, subject to customary closing conditions, including approval by Mimecast shareholders and receipt of regulatory approvals. Upon completion of the transaction, Mimecast will become a privately held company and the ordinary shares of Mimecast will no longer be listed on any public market.

**Advisors**

Citi is serving as exclusive financial advisor to Mimecast, and Goodwin Procter LLP is acting as legal counsel.

Qatalyst Partners is acting as lead financial advisor to Permira and BofA Securities, J.P. Morgan Securities LLC and RBC Capital Markets, LLC are serving as financial advisors. Blackstone Credit and funds managed by Ares Management Corporation's Credit Group are providing committed debt financing to the Permira funds. Fried, Frank, Harris, Shriver & Jacobson LLP is serving as legal counsel to Permira.

\* \* \*

24. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Mimecast's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Proxy Statement**

25. On January 12, 2022, Mimecast filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Mimecast management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Mimecast management provided to the Board and the financial advisors. Courts have uniformly stated that "projections

… are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, EBIT, Net Operating Profit After Tax ("NOPAT"), Unlevered Free Cash Flow, and Unlevered Free Cash Flow Pre SBC, but fails to provide all line items used to calculate some of the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. For Adjusted EBITDA, the Proxy Statement fails to disclose disposals and impairment of long-lived assets; acquisition-related gains and expense; litigation-related expense; restructuring expense; interest income and interest expense; provision for income taxes; and foreign exchange income (expense).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.   Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning the Financial Advisors' Financial Analysis*

32.   With respect to Citi's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the metrics and multiples for the companies selected by Citi in the analysis.

33.   With respect to Citi's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Citi in the analysis, including: (i) transaction values of the selected transactions, calculated as implied equity values for the targets companies involved in the selected transactions based on the consideration paid or payable in the selected transactions plus total debt and non-controlling interests and less cash, cash equivalents, marketable securities and investments in unconsolidated

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

affiliates; (ii) the next 12 months estimated revenue of the target companies; and (iii) the as calculated next 12 months estimated revenue multiples observed for the selected transactions.

34. With respect to Citi's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the use of the range of perpetuity growth rates of 3.0% to 5.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.3% to 10.4%; and (iv) the Company's weighted average cost of capital.

35. With respect to Citi's analysis of publicly available Wall Street research analysts for the Company, the Proxy Statement fails to disclose: (i) the price targets reviewed; (ii) the equity research analysts observed; and (iii) the inputs and assumptions for the discount rate of 9.75% used.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Citi and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Mimecast within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Mimecast, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Mimecast, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Mimecast, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 14, 2022                    **MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*